UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-018-KSF

RICHARD WAGERS, PETITIONER

V. **MEMORANDUM OPINION AND ORDER**

STEVE HANEY, Warden, RESPONDENT

\* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

On January 15, 2009, petitioner Richard Wagers, filed a *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, concerning his conviction in Fayette Circuit Court on September 5, 2001, for sodomy and sexual abuse. On December 2, 2009, respondent filed his answer to the petition and moved to dismiss and, alternatively, moved for summary judgment.[1] [DE #10]. On July 9, 2009, Petitioner filed a response to respondent's answer and opposing memorandum. [DE #17]. Thus, this matter is ripe for review.

In accordance with local practice, this matter was referred to the Magistrate Judge for consideration pursuant to 28 U.S.C. 636(b). See Rule 10, Rules Governing Section 2254 Cases in the United States District Courts; Fed.R.Civ.P. 72(b). However, in the interests of judicial economy, the court hereby withdraws the reference of this action to the Magistrate Judge.

---

[1] Along with his Rule 5 answer, respondent also filed an Appendix (hereafter "A") consisting of relevant portions of the state court record, the appellate briefs filed in the direct appeal, the opinion of the Kentucky Supreme Court on direct appeal, the appellate briefs filed in the appeal of the trial court's denial of petitioner's RCr 11.42 motion, and the opinion of the Kentucky Court of Appeals affirming the denial of petitioner's RCr 11.42 motion.

For the reasons set out below, respondent's motion to dismiss and, alternatively, for summary judgment will be granted.

## II. DISCUSSION

### A. Prerequisites for Federal Habeas Corpus Review

In order to grant relief in a proceeding pursuant to 28 U.S.C. § 2254, the court must find that certain prerequisites for granting relief are present. If these prerequisites are not met, the court must dismiss the petition without addressing its merits. Specifically, the court must find that: (1) petitioner is in "custody"; (2) petitioner has exhausted the remedies available to him in state court; and (3) petitioner did not waive or forfeit the right to present a particular issue by failing to follow state court rules to ensure that the state courts would review that issue on appeal.

At the time petitioner filed this action, he was an inmate at the Northpoint Training Center in Burgin, Kentucky. Thus, the first prerequisite is satisfied. In the discussion below, the court will determine whether the remaining two prerequisites are satisfied.

### B. Factual and Procedural History

On January 22, 2001, a Fayette County Grand Jury returned an indictment against the petitioner Richard Wagers ("Wagers") charging him with one count of first-degree sodomy, a Class A felony pursuant to Kentucky Revised Statutes (KRS) 510.070; one count of first-degree rape, a Class A felony pursuant to KRS 510.040; and two counts of first degree sexual abuse, a Class D felony pursuant to KRS 510.110. The indictment arose from separate incidents in which Wagers allegedly engaged in inappropriate sexual conduct with the minor daughters of Pam Jenkins, his then girlfriend.

Wagers pled not guilty to these charges and proceeded to trial on May 1, 2001. This trial resulted in a hung jury and a mistrial. Wagers was tried again on July 18, 2001; at the retrial, he was

convicted on the sodomy and rape counts and on one of the sexual abuse charges as to one child, J.J.; he was acquitted of the charges against the other child. The jury recommended a prison sentence totaling 35 years.

On September 5, 2001, the trial court entered a final judgment and a total prison sentence of thirty-five years, consistent with the jury's recommendation. Wagers appealed his conviction to the Kentucky Supreme Court, which, in an unpublished opinion rendered on June 12, 2003, affirmed his conviction. *Richard Wagers v. Commonwealth of Kentucky*, 2001-SC-0807-MR, June 12, 2003 (unpublished). (*See* A112-A120).

Subsequently, on October 31, 2003, Wagers moved the trial court for post-conviction relief pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42 in Fayette Circuit Court. As grounds for that motion, Wagers claimed that his trial attorney, Charles Aaron, rendered ineffective assistance of counsel by failing to introduce certain evidence concerning a vehicle that would have cast doubt on whether Wagers had been left alone with J.J. The trial court conducted an evidentiary hearing on Wagers's RCr 11.42 motion and ultimately denied that motion.

Petitioner appealed the denial of his RCr 11.42 motion to the Kentucky Court of Appeals. In an unpublished opinion rendered on February 1, 2008, the Kentucky Court of Appeals affirmed the trial court's denial of Wagers's RCr 11.42 motion. On June 11, 2008, the Kentucky Supreme Court denied discretionary review of the decision of the Kentucky Court of Appeals affirming the trial court's denial of his RCr 11.42 motion. Wagers filed this federal habeas petition on January 15, 2009.

**C.     Petitioner's claims**

As grounds for relief, petitioner asserts that in affirming his conviction on direct appeal, (1) the Kentucky Supreme Court unreasonably refused to extend its holding in *Montgomery v.*

*Commonwealth*, 819 S.W.2d 713 (1992), concerning rehabilitating potential jurors; and (2) the Kentucky Supreme Court unreasonably refused to uphold and enforce the mandatory criminal and civil rules of procedure concerning the jury selection process. Petitioner further claims that in affirming the denial of his RCr 11.42 motion, the Kentucky Supreme Court unreasonably refused to recognize the federal standard for claims of ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984).

In response to the habeas petition, the respondent submits that petitioner's claims raised therein are without merit; therefore, respondent contends that said petition for a writ of habeas corpus should be dismissed and/or that he is entitled to summary judgment.

**Applicable Law**

In considering Petitioner's claims, the court is cognizant that the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 prohibits federal courts from granting writs of habeas corpus on claims previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

In *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000), the Sixth Circuit recognized that, by reason of the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000), the standard of review that a federal habeas court must apply under § 2254(d) had been changed and that *Nevers v. Killinger*, 169 F.2d 352 (6th Cir. 1999), had effectively been overruled. Elaborating, the court in *Harris* explained:

4

On April 18, 2000, the Supreme Court issued a decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), setting forth the standard of review that a federal habeas court must apply under § 2254(d). The Court held that a decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id*. at 1523, 120 S.Ct. 1495. The Court further held that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 1522, 120 S.Ct. 1495.

In this case, the district court referred to our holding in *Harpster*, which simply noted the differing interpretations of § 2254(d) developing in our sister circuits, but found that the standard under § 2254(d) had not been met. See *Harpster*, 128 F.3d at 326-27. Subsequently, in *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.), cert. denied, 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999), we found it appropriate to rely on the Fifth Circuit's "debatable among reasonable jurists" standard in *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), combined with the First Circuit's standard of "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," set forth in *O'Brien v. Dubois*, 145 F.3d 16 (1st Cir.1998). *See Nevers*, 169 F.3d at 361-62. Later, we reaffirmed this approach in *Maurino v. Johnson*, 210 F.3d 638, 643-44 (6th Cir.2000). However, the Supreme Court in *Williams* found that the Fourth Circuit's test--that a state court's application of federal law was "unreasonable" only if the court had applied federal law in a manner that reasonable jurists would all agree was unreasonable--was erroneously subjective, as the inquiry should be objective. The Court expressly disavowed the Fifth Circuit's "reasonable jurist" standard set forth in *Drinkard*. In light of the Supreme Court's decision in *Williams*, we find that *Nevers* and *Maurino* no longer correctly state the law on the issue of the appropriate standard under 28 U.S.C. § 2254(d). We must therefore rely solely on the Supreme Court's decision in *Williams* for the appropriate standard under § 2254(d).

*Harris*, 212 F.3d at 942-43.

With this standard in mind, it is necessary to review the decision of the Kentucky Supreme Court on direct appeal, which is the final state court decision, and the decision of the Kentucky Court of Appeals, which is the final state court decision on the RCr 11.42 motion, to determine if those adjudications:

5

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

## Discussion/Analysis

A.  **Extension of the holding in *Montgomery v. Commonwealth***

Petitioner contends that, in affirming his conviction on direct appeal, the Kentucky Supreme Court unreasonably refused to extend its holding in *Montgomery v. Commonwealth*, 819 S.W.2d 713 (1992), concerning the rehabilitation of potential jurors.

One of the claims in petitioner's direct appeal was that the trial court erred by not excusing six jurors for cause for various reasons. The Kentucky Supreme Court analyzed this argument and concluded that this claim was without merit. Its analysis of that claim is set forth below:

### JURORS NOT STRUCK FOR CAUSE

> Appellant contends that the trial court erred when it refused to excuse six jurors for cause due to various biases against the defense.
>
> None of the six jurors that Appellant argues should have been excused as unqualified actually sat on the jury. However, Appellant exhausted all eight of his peremptory strikes, and thus he is entitled to challenge the composition of the jury. Marsch v. Commonwealth, Ky., 743 S.W.2d 830 (1987). "To obtain a reversal for infringement of his right to exercise peremptory challenges, appellant need only show that the trial court erred in overruling any one of his challenges for cause." Alexander v. Commonwealth, Ky., 862 S.W.2d 856, 865 (1993), overruled on other grounds, Stringer v. Commonwealth, Ky., 956 S.W.2d 883 (1997) (quoting Marsch, supra, at 834).
>
> Appellant sets out four primary reasons for the challenges to the six individual jurors not struck for cause, specifically that: (1) several jurors were unable to state unequivocally that they could be impartial; (2) some jurors were victims of past sexual abuse; (3) several jurors indicated that they would tend to believe either witnesses for the prosecution or children; and (4) several jurors indicated a tendency to impose the maximum punishment.

The decision of whether to excuse a juror for cause is within the sound discretion of the trial court, Alexander, supra, at 864, and "great deference is afforded that decision in the absence of an abuse of discretion." Mills v. Commonwealth, Ky., 95 S.W.3d 838, 842 (2003). Here, the trial court did not abuse its discretion in refusing to excuse any of the challenged jurors for cause. Two of the jurors were sexually abused as children but each ultimately stated that they could set aside their experience and be fair. These same two jurors also stated that they "would have a tendency to believe kids," or that they would "possibly" be inclined to automatically believe what the children said. "[T]he mere fact that a person has been the victim of a similar crime is insufficient to mandate a prospective juror be excused for cause." Bowling v. Commonwealth, Ky., 942 S.W.2d 293,299 (1997). The trial court observed first hand the responses and demeanor of these jurors and clearly felt that they were capable of rendering a fair and impartial verdict based solely on the evidence. We cannot say that the refusal to excuse these two jurors for cause was an abuse of discretion. Therefore, no error occurred.

Likewise, excusal for cause is not mandated simply because a juror favors severe penalties if he or she ultimately states that they will consider the full range of penalties. Woodall v. Commonwealth, Ky., 63 S.W.3d 104, 119 (2001), cert. denied, 123 S. Ct. 145, 154 L. Ed. 2d 54, 71 U.S.L.W. 3236 (2002); Grooms v. Commonwealth, Ky., 756 S.W.2d 131, 137 (1988) ("[A] juror should be excused for cause if he would be unable in any case, no matter how extenuating the circumstances may be, to consider the imposition of the minimum penalty prescribed by law."). Several of the jurors here, when asked by defense counsel if they would go straight to the maximum penalty if the defendant was found guilty, initially equivocally stated that they probably would favor the maximum. However, when questioned by the Commonwealth, the jurors stated that they would be able to consider the entire range of penalties before making their decision. The trial court was satisfied, as are we, that the jurors were not biased, as their responses to the Commonwealth were not merely serving to "rehabilitate" otherwise unqualified jurors. See Montgomery v. Commonwealth, Ky., 819 S.W.2d 713,718 (1991). There was no error.

*Richard Wagers v. Commonwealth of Kentucky*, 2001-SC-0807-MR, June 12, 2003 (unpublished), pp. 4-6 (A115-A117).

A federal court, in reviewing a petition for habeas corpus containing a claim that the trial court erred in ruling on the challenge of a prospective juror for bias must accord any findings of the state courts on "factual issues" a presumption of correctness. Wainwright v. Witt, 469 U.S. 412, 412-413, 105 S.Ct. 844 (1985), 28 U.S.C.A. § 2254(d). In determining whether to grant habeas

7

relief on a jury partiality claim, a federal habeas court must presume the correctness of the state court's finding of impartiality and will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Moore v. Johnson, 225 F.3d 495 (5th Cir. 2000). The trial court has a duty to determine questions of actual juror bias and has broad discretion in its rulings on juror challenges. Dennis v. United States, 339 U.S. 162, 168 (1950).

The federal standard for determining whether a juror is impartial and competent to sit on a jury was set forth in Adams v. Texas, 448 U.S. 38 (1980). In Adams, the Supreme Court held that potential jurors are acceptable unless their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions and oath. However, the state may insist that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court. Id. at 50.

The Kentucky courts have adopted the Adams and Wainwright holdings in Commonwealth v. Lewis, 903 S.W.2d 524 (Ky. 1995); Simmons v. Commonwealth, 746 S.W.2d 393, 396 (Ky. 1988); Caldwell v. Commonwealth, 634 S.W.2d 405, 407 (Ky. 1982); and Hicks v. Commonwealth, 805 S.W.2d 144, 147 (Ky. App. 1990). The federal standard announced in Adams is essentially the same standard that the Kentucky Supreme Court and the trial court applied in ruling on petitioner's juror challenges.

Although petitioner characterizes this claim as a refusal by the Kentucky Supreme Court to extend the holding in *Montgomery* to this case, petitioner is actually claiming that *Montgomery* is applicable and controlling precedent in this case and that the Kentucky Supreme Court erred by failing to recognize same and hold that the trial court erred in ruling on his juror challenges.

*Montgomery* concerned a highly publicized escape by eight inmates from the Kentucky State Penitentiary ("KSP") in Eddyville, Kentucky, in June of 1988. Three of the escapees were apprehended in Kentucky and were tried and convicted in Lyon Circuit Court, where the prison is located, of second-degree escape and being first-degree persistent felony offenders. On direct appeal, the defendants claimed that the trial court abused its discretion in denying their challenges for cause against sixteen jurors, five of whom actually were jurors in the case. The Kentucky Supreme Court held that the trial court's decision to overrule the defendants' challenges for cause was reversible error and that the venire persons who indicated that, as a result of their exposure to adverse pretrial publicity, they had already formed an opinion as to defendants' guilt should have been excused for cause. Essentially, the Kentucky Supreme Court concluded that these challenged jurors had been tainted by the adverse pretrial publicity and that they could not be "rehabilitated" to being qualified jurors by their responses to a "magic question." Elaborating, the Supreme Court stated:

> There is no "magic" in the "magic question." It is just another question where the answer may have some bearing on deciding whether a particular juror is disqualified by bias or prejudice, from whatever source, including pretrial publicity. The message from this decision to the trial court is the "magic question" does not provide a device to "rehabilitate" a juror who should be considered disqualified by his personal knowledge or his past experience, or his attitude as expressed on voir dire. We declare the concept of "rehabilitation" is a *misnomer* in the context of choosing qualified jurors and direct trial judges to remove it from their thinking and strike it from their lexicon.
>
> It makes no difference that the jurors claimed they could give the defendants a fair trial. As we held in Pennington v. Commonwealth, Ky., 316 S.W.2d 221, 224 (1958), "[i]t is the probability of bias or prejudice that is determinative in ruling on a challenge for cause;" and in Tayloe v. Commonwealth, Ky., 335 S.W.2d 556, 557 (1960), "the conditions were such that their connections would probably subconsciously affect their decision of the case adversely to the defendants"; and in Marsch v. Commonwealth, supra, 743 S.W.2d at 834, "their statements, given in response to leading questions, that they would disregard all previous information, opinions and relationships *should not have been taken at face value.*" Pennington,

Tayloe, and Marsch stand for the principle that objective bias renders a juror legally partial, despite his claim of impartiality.

*Montgomery*, 819 S.W.2d at 718 (emphasis in original).

The Kentucky Supreme Court's holding in *Montgomery* concerning the "challenges for cause" issue appears to be based principally on the fact that the prison escape was a highly publicized event in Lyon County, Kentucky, where KSP is located and where the trial was held, and that the challenged jurors had been tainted by the adverse pretrial publicity.

There is no indication that any of the jurors petitioner challenged in the present action should have been disqualified due to adverse pretrial publicity. Additionally, unlike the case in *Montgomery*, where five of the sixteen challenged jurors actually sat on the jury, none of the six jurors petitioner challenged in this case ultimately sat on the jury.[2] For these reasons, especially since none of the jurors petitioner challenged actually sat on the jury, *Montgomery* is not applicable to petitioner's case. The Kentucky Supreme Court committed no error by not extending the holding in *Montgomery* to his case.

In summary, the court concurs with the Kentucky Supreme Court's assessment of petitioner's claim regarding his challenges for cause to the jurors in question. Consequently, the court further concludes that petitioner has not established that the decision of the Kentucky Supreme Court on the "challenges for cause" issue (a) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court

---

[2] Although petitioner claims that juror #444, one of the jurors he had challenged, sat on the case, the state court record reflects otherwise. *See* A5-A8. Juror #444 did not sit on the jury.

proceeding. For these reasons, the court also concludes that petitioner is not entitled to federal habeas relief on this claim.

**B.     Trial court's manner of conducting the jury selection process**

Petitioner also claims that the Kentucky Supreme Court erred in ruling on his claim that the manner in which the trial court conducted the jury selection process violated Kentucky's prescribed criminal and civil rules to be followed in the jury selection process and also violated his federal due process rights and his right to a fair trial.

The Kentucky Supreme Court analyzed this claim as follows:

### JURY SELECTION PROCESS

> Appellant argues that the trial court failed to follow prescribed jury selection procedures when it empanelled the jury from only twenty-six available venirepersons, rather than the twenty-eight he contends is required by RCr 9.40 and KRS 29A.060. When the trial court realized that there were only twenty-six potential jurors left after nineteen had been struck for cause, rather than replenishing the potential panel with an additional two venirepersons, the court asked the Commonwealth to give up two of its peremptory challenges. The Commonwealth agreed, but defense counsel objected, stating that he was entitled to choose from a full panel of twenty-eight.
>
> A criminal defendant in a jury trial in circuit court is entitled to a jury of twelve persons, and both the Commonwealth and the defense are each allotted eight peremptory challenges. RCr. 9.40(1); RCr. 9.30(1); Ky. Const. § 7. Therefore, a total of twenty-eight venirepersons were necessary to properly empanel the jury in this case. RCr. 9.36(2). RCr. 9.30 states in pertinent part:
>
>> (1)(a) In a jury trial in circuit court the clerk, in open court, shall draw from the jury box sufficient names of the persons selected and summoned for jury service to compose a jury as required by law. If one or more of them is challenged, the clerk shall draw from the box as many more as are necessary to complete the jury.
>> (1)(c) When it appears that the names in the jury box are about to become exhausted, the judge may obtain additional jurors by drawing from the drum, or, with the consent of the parties, by ordering the sheriff or a bailiff appointed by the court to summon any number of qualified persons.

> Appellant's argument on appeal focuses on the randomness of the jury selection employed by the trial court and relies upon Robertson v. Commonwealth, Ky., 597 S.W.2d 864 (1980). In Robertson, this Court reversed a criminal conviction without any showing of prejudice to the defendant, because the trial court had allowed a substantial deviation from the jury selection process mandated by RCr 9.30 and KRS 29A.060. Id. at 865. There, the trial court began with thirty-six jurors and initially filed the jury box with jurors 1 through 12. As certain jurors were excused, the court replaced them with the next lowest-numbered juror in consecutive order. This method, in effect, allowed the parties to determine which jurors would be seated if certain jurors were struck. "[P]reservation of randomness is a central principle in the jury selection process. However, 'randomness means that, at no time in the jury selection process will anyone involved in the action be able to know in advance, or manipulate, the list of names who will eventually compose the. . . jury.'" Hodge v. Commonwealth, Ky., 17 S.W.3d 824, 840 (2000) (quoting Williams v. Commonwealth, Ky. App., 734 S.W.2d 810, 812-813 (1987)).
>
> In the situation at bar, the trial court's request for the parties to forego peremptory strikes rather than empanel two additional jurors, does not rise to the level of deviation that deprived the defendant in *Robertson* of a jury selected at random. There was no way that either party could have manipulated the composition of the jury or known in advance which jurors would have eventually sat on the panel. "We would not consider minor errors in jury selection reversible in the absence of a showing of prejudice." Robertson, supra at 865. Appellant cannot show how he was prejudiced by the court's failure to empanel two additional jurors that either party may have ultimately peremptorily challenged. Accordingly, we hold that the trial court in this instance, substantially complied with RCr 9.30 and KRS 29A.060 governing the jury selection process.

*Richard Wagers v. Commonwealth of Kentucky*, 2001-SC-0807-MR, June 12, 2003 (unpublished), pp. 2-4 (A113-A115).

Respondent makes a rather compelling argument that since petitioner's claim is couched in terms of the trial court having violated Kentucky state law in the jury selection process, the claim is barred from review by a federal habeas court since petitioner has not alleged a violation of federal law, only state law. However, petitioner does claim that the trial court's violation of Kentucky law also violated clearly established federal law and his Sixth Amendment right to due process; therefore, out of an abundance of caution, the federal habeas court has considered this claim on the merits.

12

Petitioner claims that the trial court's deviation from the prescribed rules for jury selection violated his due process rights and denied him a fair trial. In support of that argument, petitioner relies on *Robertson v. Commonwealth*, *supra*, wherein the Kentucky Supreme Court reversed a criminal conviction because the trial court had deviated *substantially* from the jury selection process mandated by RCr 9.30 and KRS 29A.060. Id. at 865. The jury selection process employed by the trial court in *Robertson* presented a situation where the parties could have manipulated the composition of the jury in such a manner so that they could have known in advance which jurors would eventually sit on the jury panel, which essentially destroyed the randomness of the selection process. As noted by the Kentucky Supreme Court in considering this claim, preservation of randomness is a central principle in the jury selection process.

Turning now to the jury selection process employed by the trial court in petitioner's case, the trial court realized that there were only twenty-six potential jurors left after nineteen had been struck for cause, rather than a full panel of twenty-eight. Instead of replenishing the potential panel with an additional two venirepersons, the trial court asked the Commonwealth if it would be willing to forego two of its peremptory challenges, which the Commonwealth agreed to do. Defense counsel objected on the grounds that he was entitled to choose from a full panel of twenty-eight jurors rather than a panel of twenty-six. Petitioner did not give up any of his peremptory challenges. Instead, as an accommodation to the trial court, the Commonwealth gave up two of its peremptory challenges. The only difference to petitioner was that there was a panel of twenty-six potential jurors, rather than the prescribed panel of twenty-eight, from which the jury would ultimately be chosen. Unlike the situation in *Robertson*, it was not possible for either party to have manipulated the composition of the jury or to have known in advance which jurors would eventually sit on the panel. The randomness of the jury selection process was preserved. This court concurs with the Kentucky

Supreme Court that the jury selection process employed by the trial court does not rise to the level of deviation that deprived the defendant in *Robertson* of a jury selected at random and that petitioner was not prejudiced by the trial court's failure to empanel two additional jurors which either party may have ultimately peremptorily challenged. The trial court in this instance substantially complied with RCr 9.30 and KRS 29A.060 governing the jury selection process. Any error was harmless.

Consequently, the court further concludes that petitioner has not established that the decision of the Kentucky Supreme Court on the procedure employed by the trial court in the jury selection issue (a) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the court also concludes that petitioner is not entitled to federal habeas relief on this claim.

**C.     Failure to properly consider claim of ineffective assistance of counsel**

Petitioner further claims that, in affirming the denial of his RCr 11.42 motion, the Kentucky courts failed to properly consider his claim of ineffective assistance of counsel and unreasonably refused to recognize the federal standard for claims of ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984).

In his RCr 11.42 motion, petitioner claimed that his trial counsel was ineffective for failing to introduce evidence that the victim's mother could not drive a vehicle with a standard transmission. Petitioner asserts this evidence would have supported his defense that he was not left alone with the victim; hence, there would have been no opportunity for him to have engaged in illegal sexual conduct with the victim. On appeal of the trial court's denial of his RCr 11.42 motion, the Kentucky Court of Appeals addressed that claim, as follows:

In this appeal, Wagers again argues that his trial attorney rendered ineffective assistance of counsel by failing to introduce any sort of evidence – particularly the testimony from his sister that Jenkins was unable to drive a standard-shift vehicle. He contends that the trial court erred in concluding otherwise.

To establish a claim of ineffective assistance of counsel under RCr 11.42, a movant must satisfy a two-part test by showing: (1) that counsel's performance was deficient and (2) that the deficiency caused actual prejudice that rendered the proceeding so fundamentally unfair as to produce a result that was unreliable. *Strickland v. Washington*, 466 U.S. 668,687, 104 S.Ct. 2052,2064,80 L.Ed.2d 674 (1984); *Commonwealth v. Tamme*, 83 S.W.3d 465,469 (Ky. 2002).

> The underlying question to be answered is whether trial counsel's conduct has so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Brewster v. Commonwealth*, 723 S.W.2d 863,864 (Ky.App. 1986). In assessing counsel's performance, we must examine whether the alleged acts or omissions were outside the wide range of prevailing professional norms based on an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064-65. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *Haight v. Commonwealth*, 41 S.W.3d 436,441 (Ky. 2001), *citing United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Counsel is not held to a standard of infallibility. Rather,"(t)he critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Id.*
. . .
In evaluating a claim of ineffective assistance of counsel, we must be mindful that "(t)he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Wagers complains that Aaron did not interview his sister prior to the second trial about Pam's inability to drive a standard-shift vehicle. Aaron testified, however, that because Wagers had failed to keep his appointments prior to trial, he never had an opportunity to discuss the matter with Wagers and consequently lacked any reasonable basis for preparing to cross-examine Pam Jenkins on this issue. He was equally unable to learn the names of any witnesses to subpoena who might have had information to be developed at trial. The record does not reveal whether Aaron even knew that Wagers's sister had valuable knowledge prior to trial, and Wagers's brief does not clarify this point. We also note that Wagers apparently **never** mentioned his sister's knowledge to Aaron during the course of the second trial.

> In light of Wagers's own neglect and omissions, we cannot conclude that Aaron's performance was deficient. Aaron was so concerned that he and his client were not properly prepared for trial that he took the precautionary step of asking the court to note as a matter of record that he had asked Wagers to consider postponing his trial. Wagers has utterly failed to meet his burden of establishing that he was deprived of some substantial right to justify the extraordinary relief sought in an RCr 11.42 proceeding. *Haight*, 41 S.W.3d at 442; *Dorton*, 433 S.W.2d at 118. We conclude that Wagers has failed to demonstrate that Aaron's performance was deficient or that he rendered ineffective assistance of counsel.

*Richard Wagers v. Commonwealth of Kentucky*, 2005-CA-001403-MR, February 1, 2008 (unpublished), (emphasis in original), pp. 3-4, 6-7 (A203-A204, A206-A207).

In affirming the denial of petitioner's RCr 11.42 motion, the Kentucky Court of Appeals noted that, due to petitioner's failure to keep his appointments with counsel prior to the second trial, his counsel had no opportunity to discuss the matter with Wagers and consequently lacked any reasonable basis for preparing to cross-examine Pam Jenkins on the standard-transmission issue and that his counsel was also unable to learn the names of any witnesses to subpoena who might have had information to be developed at trial. The appellate court also noted that Wagers apparently never mentioned his sister's knowledge to his counsel during the course of the second trial. Thus, petitioner's conduct and actions prior to the second trial handicapped his counsel in preparing for the second trial. Then petitioner would not agree to a continuance, all of which his counsel asked the trial court to put on the record. For all of these reasons, the federal habeas court concludes that petitioner did not establish a claim of ineffective assistance of counsel under the *Strickland* standard.

Consequently, the court further concludes that petitioner has not established that the decision of the Kentucky Court of Appeals on his claim of ineffective assistance of counsel (a) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding. Thus, the court also concludes that petitioner is not entitled to federal habeas relief on this claim.

## IV.  CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 120 S. Ct. at 1604.

For all of the reasons stated above, the federal habeas court concludes that petitioner has not made a "substantial showing" that his due process has been violated, that he was denied a fair trial, or that he received ineffective assistance of trial counsel. The court believes that its determination that petitioner has not made a  "substantial showing" as to any claimed denial of rights is not debatable. As such, petitioner is not entitled to a Certificate of Appealability.

## V. CONCLUSION

Based on a review of the record and the applicable law governing motions filed pursuant to 28 U.S.C. § 2254, to vacate, correct, or set aside sentence, for the reasons previously stated, the court concludes that petitioner is not entitled to a writ of habeas corpus.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The reference of this action to the Magistrate Judge is **WITHDRAWN**.

2. Respondent's motion to dismiss, and alternatively for summary judgment [DE #11] is **GRANTED** and that the petition filed under 28 U.S.C. § 2254, to vacate, correct or set aside sentence [DE #1] is **DENIED**.

3. All other pending motions [DE ##17, 18, 19, 26, 27, 28, 29, 37, and 43] are **DENIED AS MOOT.**

4. Petitioner's Objections to Order denying post-collateral appointment of counsel [DE # 47] are **OVERRULED.**

5. All issues having been resolved, this action be **DISMISSED** and **STRICKEN** from the docket.

6. No Certificate of Appealability shall issue.

This September 16, 2010.



**Signed By:**
*Karl S. Forester* KSF
**United States Senior Judge**